## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **JOHN HENRY RAMIREZ,** | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No. |
| **BRYAN COLLIER**, Executive Director, | § | |
| Texas Department of Criminal Justice, | § | **This is a Capital Case.** |
| Huntsville, Texas, | § | |
| | § | **Mr. Ramirez is** |
| **BOBBY LUMPKIN**, Director, Texas Department | § | **scheduled to be** |
| of Criminal Justice, Correctional Institutions | § | **executed on** |
| Division, Huntsville, Texas, | § | **September 8, 2021.** |
| | § | |
| **DENNIS CROWLEY**, Warden, Texas Department | § | |
| of Criminal Justice, Huntsville, Unit, | § | |
| Huntsville, Texas, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT PURSUANT TO 42 U.S.C. § 1983

Seth Kretzer
Law Office of Seth Kretzer
9119 South Gessner; Suite 105
Houston, Texas 77074
Tel. (713) 775-3050
seth@kretzerfirm.com

*Counsel for John Henry Ramirez, Plaintiff*

# INTRODUCTION

1. Plaintiff John Henry Ramirez is a devout Christian. He is also incarcerated at the Polunsky Unit of the Texas Department of Criminal Justice ("TDCJ") under a sentence of death.

2. The State of Texas intends to execute Mr. Ramirez by lethal injection on September 8, 2021, at the Walls Unit in Huntsville, Texas, under conditions that violate the First Amendment's Free Exercise Clause and substantially burden the exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.

3. Through the requisite TDCJ administrative channels, Mr. Ramirez has requested the presence of his spiritual advisor in the execution chamber before and during his execution, and he has requested that his spiritual advisor lay his hands upon him at the time of his death, a long-held and practiced tradition in Christianity in general and in the Protestant belief system Mr. Ramirez adheres to. Mr. Ramirez's request was denied, and he has properly exhausted all administrative remedies available to him under institutional policy.

4. Relief is necessary to ensure that Mr. Ramirez is executed only in a manner that does not substantially burden the exercise of his religious beliefs and does not violate his rights under the Free Exercise Clause or RLUIPA.

## JURISDICTION

5. This Court has jurisdiction under 42 U.S.C. §§ 2000cc-1, 28 U.S.C. §§ 1343, 1651, 2201, and 2202, and under 42 U.S.C. §1983.

## VENUE

6. Venue lies in this Court under 28 U.S.C. § 1391 because Defendants maintain offices in the Southern District of Texas. Venue is also proper because the execution will occur in this district.

## PARTIES

7. Plaintiff John Henry Ramirez is incarcerated under a sentence of death at the Polunsky Unit of TCDJ in Livingston, Texas. He is scheduled to be executed on September 8, 2021.

8. Defendant Bryan Collier is the Executive Director of TDCJ. He is being sued in his official capacity.

9. Defendant Bobby Lumpkin is the director of the Correctional Institutions Division of TDCJ. He is being sued in his official capacity. Mr. Lumpkin is the individual the trial court ordered to carry out the execution.

10. Defendant Dennis Crowley is the senior warden of the Huntsville Unit, which is the unit where executions take place. He is being sued in his official capacity. Because Mr. Crowley is the warden of the Huntsville Unit, he supervises executions in Texas.

## FACTUAL BACKGROUND

11. For approximately five years, since 2016, Pastor Dana Moore has ministered to Plaintiff Ramirez. Pastor Moore is an ordained minister who leads a congregation of roughly 200 people at Second Baptist in Corpus Christi, Texas. Pastor Moore and Plaintiff Ramirez have corresponded and visited over the years and Pastor Moore has guided Mr. Ramirez in his practice of his religious faith.

12. Until April 2019, and consistent with longstanding tradition nationwide, TDCJ allowed TDCJ-approved chaplains in the execution chamber to guide persons being executed into the afterlife according to their religious beliefs. Between 1982 and March 2019, Texas conducted 560 executions pursuant to this policy.

13. In March 2019, TDCJ refused inmate Patrick Murphy's request that his Buddhist spiritual advisor accompany him in the chamber during the scheduled execution. *See Murphy v. Collier*, 139 S. Ct. 1475 (2019) (mem.). After TDCJ refused Murphy's request, Murphy filed a request for a stay of

execution in the Supreme Court and sought to challenge TDCJ's decision on equal protection and First Amendment grounds. *See id.*

14. On March 28, 2019, the Supreme Court granted a stay of execution and issued an order prohibiting TDCJ from carrying out the execution "pending the timely filing and disposition of a petition for a writ of certiorari unless the State permits Murphy's Buddhist spiritual advisor or another Buddhist reverend of the State's choosing to accompany Murphy in the execution chamber during the execution." *Murphy*, 139 S. Ct. at 1475. Justice Kavanaugh wrote a concurring opinion in which he expressed the view that "the Constitution prohibits [the]denominational discrimination" of the then-existing TDCJ policy. *Id.* at 1475-76. Justice Kavanaugh observed that a potential remedy for this denominational discrimination would be to ban *all* spiritual advisors of *any* denomination from the chamber.

15. On April 2, 2019, TDCJ adopted another, revised execution procedure to provide that "TDCJ Chaplains and Ministers/Spiritual Advisors designated by the offender may observe the execution only from the witness rooms." Ex. 1, Tex. Dep't Crim. Just., Execution Procedure at 8 (Apr. 2019).

16. On April 21, 2021 TDCJ adopted a new protocol. Under this new protocol, the condemned may be accompanied into the execution chamber by their personal religious advisor, who may minister to the condemned prisoner

during the execution. TDCJ also requires that the advisors be verified and pass a background check.

17. For the past five years, since approximately 2016, Plaintiff Ramirez has received religious counseling and spiritual advice from his spiritual advisor, Pastor Dana Moore. Mr. Ramirez has asked Pastor Moore to be present at the time of his execution to pray with him and provide spiritual comfort and guidance in the final moments of his life. Pastor Moore has agreed to accompany Mr. Ramirez in the execution chamber when he is executed, to pray with him and to help guide him into the afterlife. Pastor Moore needs to lay his hands on Mr. Ramirez in accordance with his and Mr. Ramirez's faith tradition. This belief is set forth in the affidavit of Pastor Moore. Ex. 2, Declaration of Pastor Dana Moore.

18. The laying on of hands is a symbolic act in which religious leaders place their hands on a person in order to confer a spiritual blessing. This contact is necessary to bless Mr. Ramirez at the moment of his death.

19. This practice has its basis in Christian scripture. The Apostle Philip's preaching in Samaria where a mass of people "listened eagerly . . . believed . . . [and] were baptized" (Acts 8:11, 12) Yet these new converts did not "receive the Holy Spirit" until after "Peter and John" came to Samaria from Jerusalem and "laid their hands on them" (8:17). Similarly, when Paul later baptized a

group of Ephesian disciples, it was not until he "had laid his hands on them" that "the Holy Spirit came upon them" (Paul 19:1–6).

20. Already, TDCJ has in place specific protocols to take place prior to Pastor Moore's entry into the Walls Unit. Pastor Moore will undergo a rigorous screening process including being screened by a metal detector and having any items he carries with him screened by an x-ray. He will be required to remove his shoes and belt for inspection. Pastor Moore also is willing to undergo additional security screening, if necessary, in order to be present in the execution chamber and to have physical contact necessary to confer a blessing on Mr. Ramirez at the time of his death.

21. On June 8, 2021, undersigned counsel contacted Kristen Worman, general counsel of TDCJ, through email. That email inquired about whether Ms. Worman and TDCJ had made a decision regarding the presence of Plaintiff Ramirez's minister in the execution chamber and direct personal contact between the condemned and the pastor. Ex. 3, E-mail correspondence with Kristen Worman, General Counsel for TDCJ.

22. On June 17, 2021, Ms. Worman responded via e-mail, stating that Pastor Moore would not be allowed to have direct, personal contact with Plaintiff Ramirez in the execution chamber. *See* Ex. 3.

23. Plaintiff Ramirez submitted an Offender Form I-60 "Offender Request to Official" to TDCJ on or about July 15, 2020. In the grievance, he requested that TDCJ allow Pastor Moore to be present in the execution chamber. He further requested that Pastor Moore be allowed to have direct, personal contact with him during the execution. *See* Ex. 4.

24. Mr. Ramirez's grievance was denied, and he filed an appeal of that denial. The appeal has yet to be decided. *See* Ex. 4.

## PROCEDURAL HISTORY

25. John Henry Ramirez was convicted and sentenced to death in 2008 for the 2004 killing of Pablo Castro in Nueces County, Texas. The Texas Court of Criminal Appeals ("TCCA") affirmed the conviction and death sentence on direct appeal. *Ramirez v. State*, No. AP-76,100 (Tex. Crim. App., March 16, 2011). In 2012, the TCCA denied state post-conviction relief, after evidentiary hearing and upon the trial court's report and recommendation. *Ex parte Ramirez*, No. WR-72,735-03 (Tex. Crim. App., October 10, 2012). Mr. Ramirez timely filed a petition for writ of habeas corpus in the federal district court. The district court denied relief and a certificate of appealability. *Ramirez v. Stephens*, No. 2-12-CV-410 (S.D. Tex., June 10, 2015).

26. Mr. Ramirez filed a timely notice of appeal to the United States Court of Appeals for the Fifth Circuit. That court denied a request for certificate of

appealability on February 4, 2016. The Supreme Court denied a request for certiorari review on October 3, 2016.

27. The State of Texas set an execution date on February 2, 2017. On January 27, 2017, Mr. Ramirez moved to substitute counsel and stay the execution date. This Court granted Mr. Ramirez's motion on January 31, 2017. On August 20, 2018, Mr. Ramirez filed a motion for relief from judgment in the United States District Court. The Court denied this motion on January 3, 2019. Mr. Ramirez appealed to the Fifth Circuit, which denied the request for a certificate of appealability on June 26, 2019. The Supreme Court again denied certiorari review, on March 2, 2020, and it denied rehearing on May 18, 2020.

28. The State of Texas set another execution date of September 9, 2020. On August 14, 2020, Nueces County District Court Judge Bobby Galvan of the 94th Criminal District Court withdrew the September execution date.

29. On February 3, 2021 the State moved to set a new execution date, and on February 5, 2021, Judge Galvan signed an order setting an execution date for Mr. Ramirez of September 8, 2021.

**CLAIMS FOR RELIEF**

30. Mr. Ramirez re-alleges and incorporates by reference and the allegations contained in the previous paragraphs of this Complaint.

## CLAIM ONE: FIRST AMENDMENT FREE EXERCISE OF RELIGION

31. The First Amendment requires that "Congress shall make no law . . . prohibiting the free exercise of" religion. U.S. Const., amend. I. Like the Establishment Clause, the Free Exercise Clause is binding on the states. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the protections of the Free Exercise Clause are incorporated by the Fourteenth Amendment against the States).

32. According to its April 2021 revised protocol, TDCJ no longer precludes TDCJ-approved spiritual advisors from entering the execution chamber. Further, in spite of this protocol, which does not address whether or not the spiritual advisor can have direct, personal contact with the condemned, Defendants have informed Mr. Ramirez that his spiritual advisor will not be allowed to be present at the moment of his execution and to confer a spiritual blessing at the moment of his death via the laying on of hands. In fact, the TDCJ has not indicated it will accede to Mr. Ramirez's request that his requested spiritual advisor be allowed to be present at all in the execution chamber.

33. Many Baptist ministers see the laying on of hands as a vitally important affirmation by God's people of their calling. This laying on of hands at the time of death is the affirmation of faith at the time between life and afterlife.

34. TDCJ s intent to deny Mr. Ramirez access spiritual counseling during the moments leading up to and including his execution as well as the direct personal contact violates his First Amendment rights under the Free Exercise clause and cannot be justified by a vague citation to illusory security concerns. Furthermore, TDCJ cannot demonstrate that its current security and screening protocols are inadequate, or that it could not address security concerns with further screening measures, to which Pastor Moore has indicated he is willing to submit.

35. TDCJ's current policy with regard to the presence of spiritual advisors in the execution chamber burdens Mr. Ramirez's free exercise of his Christian faith in the moments just prior to and including his execution. It burdens his free exercise of faith at his exact time of death, when most Christians believe they will either ascend to heaven or descend to hell—in other words, when religious instruction and practice is most needed. *See*, 2 Timothy 1:6, "For this reason I remind you to kindle afresh the gift of God which is in you through the laying on of my hands." (2 Timothy 1:6). This is the most important at the moment of his death.

36. When a state hinders a prisoner's ability to freely exercise his religion, reviewing courts must determine whether the law or policy is neutral and generally applicable. *Church of the Lukumi Balbao Aye, Inc. v. Hialeah*, 508

U.S. 520, 531 (1993). If it is neutral and generally applicable, it can have an "incidental effect of burdening a particular religious practice." *Ibid.* If it is not neutral and generally applicable, it must show a "compelling governmental interest" that is "narrowly tailored to advance that interest." *Ibid.*

37. Here, TDCJ's policy is not neutral. It is hostile toward religion, denying religious exercise at the precise moment it is most needed: when someone is transitioning from this life to the next. The policy is thus permissible only if it can survive strict scrutiny, which it could not. Any argument that security concerns constitute a "compelling governmental interest" necessitating the exclusion of Mr. Ramirez's spiritual advisor from the execution chamber and preventing him from touching the condemned withers when subjected to strict scrutiny, as the Constitution requires.

38. As a federal judge in this district recently noted, when making fact-findings relevant to a recent challenge to TDCJ's previous execution policy excluding all religious advisors from the execution chamber, "Speculative hypotheticals without evidentiary support do not create an unmanageable security risk." *Gutierrez v. Saenz*, No. 1:19-cv-00185 (S.D. Tex. Nov. 24, 2020), ECF Doc. 124 at *29.

39. For these reasons, TDCJ's amended policy precluding Mr. Ramirez's spiritual advisor from being present at the moment of his execution and administering

a final blessing via the laying on of hands, in accordance with Mr. Ramirez's faith tradition, violates his rights under the First Amendment's Free Exercise Clause.

## CLAIM TWO: THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT ("RLUIPA")

40. Mr. Ramirez incorporates paragraphs 1-39, above.

41. Even if this Court finds that TDCJ's policy does not violate Plaintiff Ramirez's First Amendment rights, it should find that the policy violates RLUIPA. RLUIPA provides in part, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." RLUIPA "alleviates exceptional government-created burdens on private religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

42. Specifically, RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on the person-(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling interest.41 U.S.C. 2000cc-1(a)RLUIPA thus "alleviates exceptional government-created burdens on private religious exercise," without "elevat[ing] accommodation of religious observances over an institution's need to maintain order and safety.

12

*Cutter*, 544 U.S. at 720.

43. "In RLUIPA, in an obvious effort to effect a complete separation from the
First Amendment case law, Congress deleted reference to the First
Amendment and defined the 'exercise of religion' to include 'any exercise of
religion, whether or not compelled by, or central to, a system of religious
belief.'" *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 696 (quoting 42
U.S.C. § 2000cc-5(7)(A)). RLUIPA thus provides more "expansive
protection" for religious liberty than the United States Supreme Court case
law. *Holt v. Hobbs*, 574 U.S. 352, 358 (2015).

44. Prohibiting Mr. Ramirez from engaging in vitally important religious
practices with a chaplain at the end of his life and including the moment of his
death substantially burdens his practice of religion. *See, e.g., id*, 135 S. Ct. at
862 (2015) (determining that where a prisoner shows the exercise of religion
"grounded in a sincerely held religious belief," enforced prohibition
"substantially burdens his religious exercise").

45. Under RLUIPA, a prison may not impose a substantial burden on a prisoner's
religious exercise unless doing so satisfies the Supreme Court's "strict
scrutiny" test; the challenged policy must be "the least restrictive means of
furthering [a] compelling governmental interest." 42 U.S.C. §2000cc-1(a).

46. The strict scrutiny standard is "exceptionally demanding." *Holt*, 574 U.S. 352, 353, quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. at 728.

47. Defendants have not employed the least restrictive means to further a compelling interest. Defendants have the burden to prove this defense. *See, Holt*, 574 U.S. at 357, 362.

48. As a federal judge in this district recently noted, when making fact-findings relevant to a recent challenge to TDCJ's execution policy excluding all religious advisors from the execution chamber, "Speculative hypotheticals without evidentiary support do not create an unmanageable security risk." *Gutierrez v. Saenz, supra*, ECF Doc. 124 at \*29.

49. TDCJ's amended policy places a substantial burden on Mr. Ramirez's practice of a sincerely-held religious belief in the "spiritually charged final moments of life," leading up to and including his execution, when religious observance and spiritual guidance are most critical. No compelling security interest justifies the burden on his religious exercise.

50. Accordingly, if the Court concludes that TDCJ's revised policy does not violate the First Amendment, it should decide that the policy violates RLUIPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Henry Ramirez prays that this Court provide relief as follows:

1. A declaratory judgment that TDCJ's amended policy violates Mr. Ramirez's First Amendment rights under the Free Exercise Clause;

2. A declaratory judgment that TDCJ's amended policy violates Mr. Ramirez's rights under RLUIPA; and

3. A preliminary and permanent injunction prohibiting Defendants from executing Mr. Ramirez until they can do so in a way that does not violate his rights.

Respectfully submitted,

/s/ Seth Kretzer
Seth Kretzer
Law Office of Seth Kretzer
9119 South Gessner; Suite 105
Houston, Texas 77074
Tel. (713) 775-3050
seth@kretzerfirm.com

## VERIFICATION

I, Seth Kretzer, attorney for the Plaintiff in the above-titled action, state that to the best of my knowledge and belief, the facts set forth in this Complaint are true.

Executed on August 10, 2021.

/s/ Seth Kretzer
Seth Kretzer

## CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the above pleading to the following on August 10, 2021.

Jennifer Morris
Assistant Texas Attorney General
Austin, Texas