IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JOHN HENRY RAMIREZ, § | |
| *Plaintiff,* § | |
| § | CIVIL ACTION NO. 2:21-cv-167 |
| v. § | *DEATH PENALTY CASE* |
| § | |
| BRYAN COLLIER, et al., § | |
| *Defendants.* § | |

**DEFENDANTS' SURREPLY ON PLAINTIFF'S
MOTION FOR A STAY OF EXECUTION**

Plaintiff John Henry Ramirez is a Texas death row inmate who is currently scheduled to be executed after 6:00 p.m. (CDT) on September 8, 2021. Ramirez filed a motion for stay of execution pending disposition of his § 1983 complaint. DE 11. Without obtaining leave of the Court, Ramirez filed a second amended § 1983 complaint, raising new and unexhausted claims. DE 12. Defendants filed a response in opposition to Plaintiff's motion for stay of execution, DE 13, to which Plaintiff replied. DE 14. To address arguments Plaintiff raised for the first time in his reply, Defendants file the instant surreply.

**I.   TDCJ's Current Protocol Allows Ramirez to Spend Up to Six Hours with His Pastor on Execution Day.**

Lost in Eastern religion and Fyodor Dostoevsky's philosophies on crime and repentance, *see* DE 14 at 3, 6, Ramirez overlooks the more relevant considerations, such as the ways in which TDCJ is accommodating his

1

religious needs. TDCJ's current policy allows Ramirez to visit with his pastor (or his family members) from 8:00 a.m. to 12:00 p.m. at the Polunsky Unit on the morning of his execution, and then again at the Huntsville Unit from 3:00 to 5:00 p.m. prior to his execution. DE 13-1 at 7–8; DE 14 at 11. During those six hours, Ramirez's pastor may read scriptures and pray aloud with him. *See* DE 14 at 11.

## II. Ramirez's Pastor Will Be in His Immediate Presence in the Execution Chamber.

The Supreme Court's decision to grant of a stay in *Gutierrez v. Saenz*, 141 S. Ct. 127 (2021), and refusal to vacate a stay in and *Dunn v. Smith*, 141 S. Ct. 725 (2021), turned upon prison policies that excluded an inmate's spiritual advisor from the execution chamber. Ramirez bolds, italicizes, and underlines the Court's (insignificant) language in *Gutierrez* and Justice Kagan's figure of speech in *Smith* to suggest that they turned—not on the walls between the inmate and his advisor—but on the number of inches that separated them. *See* DE 14 at 13.

From there, Ramirez asserts—in quotations—that TDCJ insists upon "substantial physical distance" between him and his pastor in the execution chamber. DE 14 at 13. But if the quotes Ramirez places around "substantial physical distance" signify anything, it is his own hyperbole, as TDCJ has not used the term in its policy or anywhere. And the size of the execution chamber

exposes Ramirez's hyperbole for what it is, as the chamber leaves no room for "substantial physical distance" between any of its occupants. As can be seen from the photographs of the chamber, Ramirez will be on a gurney in the middle of the chamber,[1] while his pastor stands in his "immediate physical presence" in the corner of the room. *See* Def. Exhibit 1; DE 14 at 12 (citing *Gutierrez v. Saenz*, 141 S. Ct. 127, 128 (2021)).

### III. Both the BOP and TDCJ Impose No-Contact and No-Speaking Restrictions to Mitigate the Risk of Allowing an Outside Spiritual Advisor into the Execution Chamber.

While repeatedly calling TDCJ's security concerns illusory, DE 5 at 11; DE 12 at 13, Ramirez also attests to his pastor's willingness to submit to further screening measures to address those concerns. DE 12 at 9–10, 13. Now, in his reply brief, Ramirez reveals that his pastor has already breached the only promise that he has had the opportunity to breach: Pastor Moore signed a non-disclosure agreement on August 26, 2021, in which he represented he would "not disclose any information, including but not limited to the identities of [TDCJ] employees" learned "through [his] participation as a spiritual

---

[1] These photographs were taken in 2019 and filed by Defendants as exhibits in Murphy's and Gutierrez's § 1983 civil-rights proceedings. Due to the last-minute nature of Ramirez's complaint, Defendants were unable to provide a new photograph of the chamber in time to include with the instant surreply. Since the picture was taken, the gurney has been rotated 180 degrees, such that the head is against the wall. Because the size of the chamber remains the same, Defendants believe this photograph is adequate for the limited purpose they present it for.

advisor in [Ramirez's] execution." DE 14 at 8. And yet, upon signing the agreement, Pastor Moore sent a photograph of it to counsel, complete with the printed name and signature of a TDCJ employee he learned of during his participation at the orientation (that counsel was not allowed to attend).[2] *See* DE 14 at 7. While Ramirez is sure to claim that TDCJ has no interest in protecting the anonymity of its employees who play a role in the process, it is not up to him or his pastor to violate protocol if they perceive the risk to be benign. Pastor Moore signed a nondisclosure agreement and then did precisely what its terms forbid. His violation of the agreement raises questions about his trustworthiness in complying with TDCJ's prohibitions against physical contact and audible prayer in the execution chamber—which are also driven by security interests Ramirez does not respect. *See, e.g.*, DE 5 at 11; DE 12 at 13.

Whether Ramirez believes it or not, prisons have a strong interest in "controlling access to" their execution chambers and in ensuring "that the execution occurs without any complications, distractions, or disruptions." *Murphy v. Collier*, 139 S. Ct. 1475, 1475-76 (2021) (Kavanaugh, J., concurring); *see also* Order on Security Concerns Associated with Outside Spiritual

---

[2] Apparently eager to disclose the name of a second "witness," Ramirez explains that he cannot because the name is illegible "in its cursive signature." DE 14 at 7. The nondisclosure agreement reflects, however, that there was only one witness who signed his name and then printed it, as such documents typically call for. *See* DE 14 at 8.

Advisor's Presence in Chamber at 19, 24, *Gutierrez v. Saenz*, No. 1:19-cv-185, DE 124. Indeed, all five of the Justices who have written or signed an opinion on the issue have acknowledged that allowing an outsider into the execution chamber poses a security risk. *See Murphy*, 139 S. Ct. at 1475–76 (Kavanaugh, J., concurring); *Smith*, 141 S. Ct. at 725–26 (Kagan, J., concurring, joined by Breyer, J., Sotomayor, J., and Barrett, J.) and (Kavanaugh, J., dissenting); *accord Gutierrez*, at 19 (recognizing that "precaution requires precisely crafted policy" for executions). To mitigate the risk, the Justices have offered potential solutions, sanctioning the BOP's execution policy as one of them. *Id.*

Following the Justices' advice, TDCJ implemented its current policy, which tracks the BOP's risk-mitigation protocol for executions involving outside spiritual advisors in the chamber. Where the BOP prohibits outside advisors from making physical contact with an inmate prior to and during his execution, so too does TDCJ. *Compare* Order on Security Concerns Associated with Outside Spiritual Advisor's Presence in Chamber at 13, *Gutierrez v. Saenz*, No. 1:19-cv-185, DE 124 (citing BOP memorandum indicating spiritual advisor will not be allowed to touch inmate upon entering execution chamber and is subject to removal for any disruptive physical contact), *with* DE 13-2 (declining Ramirez's request for his pastor to touch him "during [his] execution"). Where the BOP prohibits outside advisors from verbally disrupting the execution, Ramirez calls TDCJ's similar prohibition an "unholy

5

trinity of constitutional violations." *Compare* Order on Security Concerns Associated with Outside Spiritual Advisor's Presence in Chamber at 13, *Gutierrez*, No. 1:19-cv-185, DE 124, *with* DE 14 at 11.[3] And where the BOP warns that a spiritual advisor's violation of either of these rules will result in his removal from the execution chamber, Ramirez claims TDCJ's warning on same evinces its intent to "hide" its unconstitutional policy." DE 14 at 9. Finally, where Justice Kagan suggested that states might mitigate risks by requiring outside advisors to take a penalty-backed pledge before entering the chamber,[4] Ramirez asserts that TDCJ cannot "get away with" requiring his pastor do so. According to Ramirez, a penalty-backed pledge is really a "religious gag order" that "violat[es] the First Amendment's religious protections by violating its free speech protections." DE 14 at 9–10.

To substantiate his allegations of a constitutional violation, Ramirez needs more than biblical analogies and hyperbole. He needs a policy less restrictive than the one he complains of. DE 14 at 11.[5] Because he offers none, the Court is left again with TDCJ's and the BOP's policies. Both mitigate the

---

[3] The Director notes that the claims Ramirez raises in his second amended complaint must be dismissed, as he has not exhausted administrative remedies therefor. *See* DE 12; 42 U.S.C. § 1997e(a). *Booth v. Churner*, 532 U.S. 731, 739, 740–40 n.6 (2001); *see Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)); *Jones v. Bock*, 549 U.S. 199 (2007)).

[4] *Dunn v. Smith*, 141 S. Ct. at 726 (Kagan, J., concurring).

[5] He also needs to and fails to show that TDCJ's policy substantially burdens his religious exercise. *See* DE 13 at 10.

6

risk of an outsider's presence in the chamber by imposing physical contact and verbal restrictions that preclude the accommodations Ramirez seeks. Ramirez fails to acknowledge the BOP's policy at all, much less that it is, in all relevant parts, the same as the one he complains of. If TDCJ is imposing an "unholy trinity of constitutional violations" as he alleges, then the BOP must also be. The Justices' recent discussion of the BOP's policy, however, leaves a different impression, as they cite it as the "less restrictive" model policy that effectively mitigates the risk of an outsider's presence in the chamber (through its restrictions). If the Justices knew of a policy less restrictive than the BOP's, none mentioned it. *See Smith*, 141 S. Ct. at 725–26. And because Ramirez does not either, he fails to establish a single—much less triple—constitutional violation based on TDCJ's policy imposing the same restrictions.

## CONCLUSION

For these reasons, Plaintiff's request for a stay should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jennifer Wren Morris
JENNIFER WREN MORRIS
Assistant Attorney General
State Bar No. 24088680
Southern District No. 2237541

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
email:  jennifer.wren@oag.texas.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

    I do herby certify that on August 30, 2021, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Seth Kretzer
9119 South Gessner, Ste. 105
Houston, TX 77054
seth@kretzerfirm.com

                                            s/ Jennifer Wren Morris
                                            JENNIFER WREN MORRIS
                                            Assistant Attorney General

# AFFIDAVIT FOR PROVE-UP OF PHOTOGRAPHS

# EXHIBIT 1

AFFIDAVIT FOR PROVE-UP OF PHOTOGRAPHS

THE STATE OF **TEXAS** §

COUNTY OF **WALKER** §

BEFORE ME, the undersigned authority, on this day personally appeared Jeremy Desel, who, being by me duly sworn, deposed as follows:

My name is Jeremy Desel and I am an employee of the Texas Department of Criminal Justice (TDCJ), a governmental agency. I am over 21 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I have personally observed the TDCJ Execution Chamber at the Huntsville Unit on many occasions and am familiar with the layout and proportions. The attached photographs are true and accurate representations of the TDCJ Execution Chamber as it exists today. The photographs depict the gurney in the chamber, the plexiglass windows separating the execution chamber from the two adjacent viewing rooms, and photographs taken from inside the offender witness viewing room looking into the execution chamber. The photograph taken from inside the offender witness viewing room looking into the execution chamber depicts the gurney and the back wall of the execution chamber.

I declare under penalty of perjury that the foregoing is true and correct.

"Further Affiant sayeth not."

_____
Jeremy Desel
Director
Communications, EAS
Texas Department of Criminal Justice

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned notary public, on the 10th day of July, 2019.

_____
NOTARY PUBLIC, STATE OF TEXAS

Ashley Dixon
Notary's Printed Name

My Commission Expires:
10/12/2020

[Notary Seal: ASHLEY DIXON, Notary Public-State of Texas, Notary ID #12592190-2, Commission Exp. OCT. 12, 2020, Notary without Bond]

**Murphy 1739**

Gutierrez Defs' Exh. F    001



Gutierrez Defs' Exh. F 002 Murphy 1733


Gutierrez Defs' Exh. F    004    Murphy 1736